UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES – GENERAL

Case No.   2:26-cv-02322-SK                          Date: July 1, 2026

Title      Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc.

Present: The Honorable: Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s)/Petitioner(s): | Attorneys Present for Defendant(s)/Respondent(s): |
|---|---|
| None present | None present |

**Proceedings:**     (IN CHAMBERS) **ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [ECF 9] AND DENYING DEFENDANT'S MOTION TO DISMISS [ECF 5]**

### I.
### BACKGROUND

Plaintiff Andres Soares sought alternative financing for his business through Paychex, Inc. and Alterna Capital Solutions, LLC.  To that end, he allowed them to obtain his credit information, which they in turn procured from TransUnion Risk and Alternative Data Solutions, Inc. (TRADS).  Based on the information that TRADS provided (which apparently included criminal history), Paychex and Alterna denied plaintiff the financing he wanted.  So, soon enough, he sued Paychex, Alterna, and TRADS in Los Angeles County Superior Court, although he eventually settled his dispute with Paychex and Alterna.

TRADS, meanwhile, is still being sued under California's Investigative Consumer Reporting Agencies Act (ICRAA), Cal. Civ. Code § 1786 et seq.  Plaintiff claims that TRADS gave Paychex and Alterna an "investigative consumer report" including criminal history without the notice, disclosure, or copy of the report required by ICRAA.  (ECF 1-2 at 7–11).  Yet plaintiff sues not only for himself but also on behalf of a putative class of absent parties allegedly injured by TRADS in similar fashion.  (*Id*. at 11–15).  And according to his complaint, each putative class member suffered a quantifiable "loss" of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:26-cv-02322-SK                           Date: July 1, 2026
Title        Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc.

at least $10.35—the estimated value of the "free" report available to protected consumers under ICRAA.  (*Id.* at 14, 17; ECF 9 at 11).  Otherwise, the complaint alleges only that some of the putative class members may have experienced some unspecified "adverse action" like plaintiff when TRADS furnished a qualifying report to unidentified third parties without strict ICRAA compliance.  (ECF 1-2 at 14).

TRADS, in turn, removed plaintiff's complaint to this federal court under the Class Action Fairness Act (CAFA).  *See* 28 U.S.C. § 1332(d).  CAFA permits such removal when, among other preconditions, a class-action complaint alleges an amount in controversy over $5 million.  Using the $10.35 damages figure alleged in plaintiff's complaint as the baseline quantum of actual damages at issue (without conceding liability), TRADS multiplied that figure by several hundred thousand reporting transactions that the company issued for California consumers—all while disavowing that such transactions even qualify under ICRAA as "investigative consumer reports." (ECF 1 at 12–14).  Still, because that math exercise yielded an amount more than $5 million, TRADS relied on it to remove this action under CAFA.[1]  (*Id.*).

Plaintiff then moved for a remand to state court.  (ECF 9).  At first, plaintiff maintained that TRADS had not met its burden to establish the minimum amount in controversy under CAFA.  (*Id.* at 15–17).  But by the hearing date on plaintiff's motion, TRADS had (evidently) presented enough evidence to satisfy plaintiff—causing him to abandon any argument for remand based on the CAFA amount-in-controversy requirement.  (5/6/26 RT 91).  That left plaintiff with only one possible basis for remand: a finding that the absent class members lack Article III standing.  (ECF 9 at 12–15; ECF 20 at 4–7).  The dilemma for plaintiff, of course, was that a remand to his desired state-court forum due to lack of concrete injury sufficient to confer Article III standing in federal court could gut (at least practically) most of his theories for sizable

---

[1] TRADS then moved soon after to dismiss plaintiff's complaint.  (ECF 5).  In its motion, TRADS argues that plaintiff's complaint falters under every element of an ICRAA claim.  It contends that plaintiff and the class are not eligible "consumers" protected by ICRAA, that TRADS is not an entity covered by ICRAA, and that it doesn't even issue "investigative consumer reports" as defined by ICRAA.  (*Id.* at 10–17).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:26-cv-02322-SK                          Date: July 1, 2026
Title      Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc.

class-wide financial relief—due to the same lack of concrete injuries sufficient to confer Article III standing.  (5/6/26 RT 92–94).

As a result, plaintiff tried to hedge.  While professing at the hearing on his remand motion to take no position on the matter, plaintiff "invited" the court to consider that the absent class members *may* lack Article III standing according to a pair of federal court decisions rejecting such standing for similarly-situated plaintiffs based on the absence of concrete injury.  (5/6/26 RT 25, 29, 92–94).  When pressed, though, plaintiff could offer no valid or persuasive reason to part company with those federal courts that have rejected Article III standing on functionally identical facts.  (5/6/26 RT 25–26, 29, 91–94).  All the while, no one—including TRADS—could genuinely (and correctly) deny that the court has an independent duty to confirm its jurisdiction at any time.  (5/6/26 RT 18, 22).  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  Thus, plaintiff (begrudgingly) requested remand for lack of Article III standing among the absent class members—even if it came with potentially adverse litigation consequences downstream on the merits of plaintiff's ICRAA class action later in state court.[2]  (5/6/26 RT 26, 28–29, 92–94).

**II.**

**DISCUSSION**

The judicial power of federal courts extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  The "irreducible constitutional minimum" of a case or controversy is standing—an injury in fact that is concrete and particularized, fairly

---

[2] There was no dispute at the hearing that plaintiff himself has standing to sue here.  He alleges that a qualifying report about him was pulled, contained criminal history information, and was used to deny him financing while he was told none of what ICRAA supposedly required in that situation.  (ECF 1-2 at 7–11).  Merits aside, that is a claimed concrete and personal injury—enough to let him through the federal courthouse door on his own ICRAA claim.  It is not, however, enough to keep his case here for a separate reason.  Whatever plaintiff could recover individually—his actual damages or the $10,000 that ICRAA fixes for a single consumer's claim, Cal. Civ. Code § 1786.50(a)(1)—still comes nowhere near the $5 million required by CAFA.  And no other basis for federal jurisdiction is offered or apparent.  *See* 28 U.S.C. §§ 1331, 1332.  Jurisdiction over this case therefore effectively hinges on the constitutional standing of the absent class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:26-cv-02322-SK                    Date: July 1, 2026
Title        Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc.

traceable to the defendant's conduct, and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up).  Naturally, the party invoking federal jurisdiction ordinarily carries the burden to establish it.  *Id.* at 561.  But because Article III standing fixes the outer bound of the judicial power itself, no statute may supply it and no litigant may concede it—the court has an independent duty to satisfy itself that standing exists, no matter what the parties may say or prefer. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016); *United States v. Hays*, 515 U.S. 737, 742 (1995).  As a result, TRADS's apparent willingness to assume that the putative class has standing—to keep this case in federal court just long enough to win its own parallel motion to dismiss—is beside the point.  (5/6/26 RT 97, 110).

If anything, TRADS's arguments in its motion only tend to confirm what the complaint's class-wide allegations make plain—no absent class members were concretely harmed by anything TRADS allegedly failed to do, even if ICRAA covered its conduct.[3] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021).  Indeed, the only measurable injury alleged on the absent class members' behalf is that TRADS furnished investigative consumer reports to third parties without also providing the free copy of the reports that ICRAA affords to the consumers—a loss plaintiff measures by the estimated $10.35 value of each "free" report.  (ECF 1-2 at 14, 17).  But a bare departure from a statutory procedure, standing alone, is not the kind of concrete harm Article III recognizes.  *See TransUnion LLC*, 594 U.S. at 442.  And "[e]very class member must have Article III standing in order to recover individual damages."  *Id.* at 431.  Applying those bedrock principles, two federal courts have rejected standing on facts materially indistinguishable from this case.

The first decision, *Rotor v. Signature Consultants, LLC*, 2019 WL 3246535 (N.D. Cal. July 19, 2019), addressed the parallel disclosure requirements of the federal Fair Credit Reporting Act (FCRA).  *Id.* at *2–*5.  As here, the plaintiff in *Rotor* complained

---

[3] Recall that TRADS's motion to dismiss contends, among other things, that neither plaintiff nor any putative class members (on the alleged facts here) are even the covered "consumers" that ICRAA is intended to protect.  Cast in Article III terms, that is pretty close to the argument that the absent class members lack standing—even if there is no comparable case-and-controversy requirement in state court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:26-cv-02322-SK | Date: July 1, 2026 |
|---|---|---|
| Title | Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc. | |

only that FCRA's consumer-protective requirements, including its required disclosures, were unmet—but without identifying any harm or risk of concrete harm from their absence. *Id.* The court thus found no injury in fact sufficient to confer Article III standing. The second decision, *Burton v. Peak Campus Cal., Inc.*, 2020 U.S. Dist. LEXIS 128721 (N.D. Cal. July 21, 2020), applied the inescapable logic of *Rotor* to a claim under ICRAA. *Id.* at *3. The plaintiffs there, like the putative class here, alleged that an agency had failed to furnish the certifications and report copies that ICRAA requires. But also as here, the complaint in *Burton* drew "no connection" between the statutory violation and any concrete injury, offered "no allegation that the plaintiffs were deprived of any information that was valuable to them," and nowhere alleged "that the plaintiffs would have checked the box to request a copy of their reports if the option had been given to them." *Id.* at *2–*3. The court in *Burton* thus found no Article III standing and remanded the ICRAA action to state court. *Id.* at *3. So, too, should it be here.

For his part, plaintiff does not even contend that *Rotor* or *Burton* are distinguishable in any way that matters legally. (5/6/26 RT 25, 28, 92–93). Nor could he. No class members are alleged to have been harmed by any information in an investigative consumer report furnished by TRADS, to have sought a free copy of a report, or to have been refused a copy when they asked. While the complaint makes fleeting mention of unspecified "adverse actions" against plaintiff and some class members, that is not enough to plausibly allege plaintiff or the class "would have taken any action, or avoided any nonspeculative harm" if only TRADS had complied with ICRAA. *Nunley v. Cardinal Logistics Mgmt. Corp.*, 2022 WL 5176867, at *5 (C.D. Cal. Oct. 5, 2022). All that is left, then, is the $10.35 said to have been "lost" by each absent class member—but that is the value of a document that no class member is plausibly alleged to have wanted, requested, or been denied. What's more, plaintiff concedes that "most of the class members, and [he] himself, do not seem to have paid any fee for the reports." (ECF 20 at 6). So, other than registering his mere disagreement (and dissatisfaction) with the reasoning and outcomes of *Rotor* and *Burton*, plaintiff is compelled to concede that remand must be ordered according to the logic of those

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:26-cv-02322-SK                          Date: July 1, 2026
Title        Andres Soares v. TransUnion Risk and Alternative Data Solutions, Inc.

decisions, since there is no more concrete injury alleged here than that found missing in those cases.  (5/6/26 RT 92–93).  And if that is the case, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring).

**III.**

**CONCLUSION**

For all these reasons, plaintiff's motion to remand this action (ECF 9) is GRANTED.  *See Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1196–97 (9th Cir. 2016).  Meanwhile, defendant TRADS's motion to dismiss (ECF 5) is DENIED WITHOUT PREJUDICE as moot.  The clerk of court is ordered to transmit the record of this case to the Los Angeles County Superior Court in Case No. 26STCV03211.

IT IS SO ORDERED.